IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Jimmy Filyaw,                                      )      C/A No.: 5:25-6455-SAL-KDW
                                                   )
                          Plaintiff,               )
                                                   )
        v.                                         )      REPORT AND RECOMMENDATION
                                                   )
                                                   )
South Carolina Dept. of Mental Health;             )
Office of Attorney General S.C.; The State         )
of South Carolina; Recovery Solutions; Civil       )
Commit Housing Facility; DMH Bartlett;             )
Medical   Coordinator   Ron   Lawrenz;             )
Administrator Dr. Duby; Ramos-Security;            )
DMH Office Director Robert Bank; Kelly             )
Gothard, Ph.D.; Alan Wilson, Attorney             )
General; Assistant Attorney General; Carly         )
H. Davis; Governor Henry McMaster;                 )
Senator Lindsey Graham;                            )
                                                   )
                          Defendants.              )

Plaintiff Jimmy Filyaw, proceeding pro se, is currently a resident of the Sexually Violent Predator Treatment Program ("SVPTP") and is involuntarily committed to the custody of the Department of Behavioral Health and Developmental Disabilities Office of Mental Health ("OMH," formerly known as "SCDMH"). Plaintiff has been a resident of the SVPTP program since February 13, 2018. On June 30, 2025, Plaintiff initially filed this action in federal court against the following Defendants: (1) South Carolina Department of Mental Health; (2) the Office of the Attorney General; (3) the State of South Carolina; and (4) Ralph James Wilson, Jr.[1] Plaintiff alleges his constitutional right to due process was violated, because he had not undergone an annual evaluation in 2022, 2023, 2024 and part of 2025, as provided to sexually violent predators pursuant to the Sexually Violent Predator Act, S.C. Code Ann § 44-48-110 (the "SVPA"). ECF No. 1 at 4.

---

[1] This Defendant was dismissed pursuant to a court order on September 23, 2025. ECF No. 35.

He further argued that he has not been provided counsel after his first attorney died. *Id.* at 6. Plaintiff further alleges that OMH is providing evaluations to some residents, but not others. Further, Plaintiff alleges that he has suffered from complications stemming from heart surgery and a pacemaker, gall bladder removal, and other mental issues. Filyaw seeks release from civil commitment, the condition that he be required to undergo GPS monitoring overturned, and he be removed from the sex offender registry. *Id.* at 6. After the filing of his initial Complaint, Filyaw has sought to amend his pleadings multiple times. This court granted one of Filyaw's requests to amend his pleading on November 18, 2025, thereby adding Defendant Robert Bank and Defendant Kelly Gothard to this action. ECF No. 57.[2]

On September 2, 2025, the South Carolina Department of Mental Health filed an Answer to the Complaint. ECF No. 20. A Scheduling Order was then issued in this case, setting a deadline to amend pleadings by October 6, 2025, and a dispositive motions deadline set for December 15, 2025. ECF No. 26. On September 23, 2025, the State of South Carolina and the Office of Attorney General filed a Motion to Dismiss the Complaint. ECF No. 34. On January 21, 2026, Defendants Bank (incorrectly identified as "Banks"), Gothard, and the South Carolina Department of Mental Health filed a Motion for Summary Judgment. ECF No. 85. Rather than filing a succinct response to these motions, Filyaw has sent this court numerous letters and miscellaneous motions requesting an assortment of requested relief. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Local Civil Rule 73.02(B)(2), D.S.C, which provides for all pretrial proceedings in certain types of matters be referred to a United States Magistrate Judge. The undersigned now issues the following Report

---

[2] Filyaw sought to add thirteen Defendants; however, Filyaw failed to provide proper service documents in a timely fashion and/or failed to time serve those individuals and entities as noted in the court's previous order, ECF No. 127.

and Recommendation.[3]

I.    Background

The SVPTP provides sex offender treatment to individuals who have been civilly committed pursuant to SVPA.[4] The SVPTP provides, in part, evidence-based, sex offender specific treatment. The daily operations of the SVPTP were transferred to Correct Care of South Carolina. *Se*e Defs.' Br. at 1-2, ECF No. 85-1.[5] The SVPA governs and delineates certain commitment procedures, periodic review procedures, and release procedures. *See* S.C. Code Ann. § 44-48-10 *et seq.* The initial commitment proceeding consists of a circuit court holding a trial to determine, beyond a reasonable doubt, if the individual is a sexually violent predator and is unsafe to be at large. S.C. Code Ann. § 44-48-100. The individual remains committed to the custody of the Office of Mental Health for "control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that the person is safe to be at large." S.C. Code Ann. § 44-48-100(A). Once an individual has been committed, he or she receives an evaluation of their mental condition within one year of the initial commitment order. S.C. Code Ann. § 44-48-110(A)(1). After the first review, an OHM-designated qualified evaluator will "evaluate the resident's mental condition within one year after a pending review is resolved by a

---

[3] In this court's prior order, ECF No.127, it found that Filyaw failed to properly serve proposed Defendants that the court had allowed him to add to this action, provided he fully complete summonses. Based on this court's prior order, ECF No. 127, the undersigned recommends dismissing these Defendants from this action.

[4] https://recoverysolutions.us/south-carolina-svptp/

[5] Filyaw had previously identified this entity as Recovery Solutions, formerly Wellpath and/or Correct Care. ECF Nos. 52 at 1; 54 at 1. It appears that Correct Care of South Carolina is the more accurate identifier for the entity "Wellpath." *See Cyr v. McMaster*, No. 8:24-CV-6067-DCN-WSB, 2025 WL 4417353, at *1, n. 2 (D.S.C. Nov. 5, 2025), *report and recommendation adopted*, No. 8:24-CV-6067 DCN, 2025 WL 4417890 (D.S.C. Dec. 17, 2025).

filed court order." S.C. Code Ann. § 44-48-110(A)(1). The order must indicate a finding of no probable cause, a waiver by the resident, or an order of continued commitment after a periodic review trial. S.C. Code Ann. § 44-48-110(A)(1)(a)-(c). In practice then, after initial review, a resident's periodic review must occur within one year after the resolution and full adjudication of a pending review. Filyaw was committed to the SVPTP on February 13, 2018. He argues that he did not receive an "annual evaluation" from 2022 through part of 2025.

On June 16, 2026, Filyaw provided a letter to this court, dated April 23, 2026, that was addressed to him and sent by attorney Kindle Johnson. *See* ECF No. 123-1. The letter summarizes the current status of Filyaw's commitment and is a memorialization of Mr. Johnson's conversation with Filyaw regarding Filyaw's voluntary waiver of the pending periodic review of his most current evaluation regarding his continued commitment. It appears Mr. Johnson represented Filyaw in the statutory proceedings in state court. Filyaw also attached a letter from Defendant Bank, dated March 31, 2026, authorizing Filyaw to petition the court for his release in state court. *See* ECF No. 123-1 at 11.

II.     Standards of Review & Analysis

A. Motion to Dismiss (ECF No. 34)

Defendants Office of Attorney General of South Carolina, and the State of South Carolina filed their Motion pursuant to 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff. *Richmond, Fredericksburg & Potomac R. Co. v. U.S.*, 945 F.2d 765, 768 (1991). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."

*Id.* The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. *Id.* The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. *Id.* A party filing a motion pursuant to Federal Rule of Civil Procedure (12)(b)(2) raises the defense of lack of personal jurisdiction. As in this case, when a defendant challenges whether the court has personal jurisdiction over him, the plaintiff has the "burden of proving" that jurisdiction exists "by a preponderance of the evidence." *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997).

"A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). A motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Fed. R. Civ. P. 12(b)(6). The Supreme Court considered the issue of well-pleaded allegations, explaining the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . .

550 U.S. 544, 555 (2007) (internal citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citing *Twombly*, 550 U.S. at 556); *see also Tobey v. Jones*, No. 11-2230, 2013 WL 286226, at *3 (4th Cir. Jan. 25, 2013) (affirming district court's denial of Rule 12(b)(6) motion, noting that

5

*Twombly* reiterated that a plaintiff "was not required to state [] precise magical words" to plausibly plead claim). When ruling on a motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The court is also to "'draw all reasonable inferences in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)).

Although a court must accept all *facts* alleged in the complaint as true, this is inapplicable to legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citation omitted). While legal conclusions can provide the framework of a complaint, factual allegations must support the complaint for it to survive a motion to dismiss. *Id.* at 679. Therefore, a pleading that provides only "labels and conclusions" or "naked assertion[s]" lacking "some further factual enhancement" will not satisfy the requisite pleading standard. *Twombly,* 550 U.S. at 555, 557. Further, the court need not accept as true "unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs., Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

The Office of the Attorney General and the State of South Carolina argue that Filyaw's Complaint must be dismissed for several reasons, including that he lacks standing to sue the State of South Carolina, that his claim are moot, that both the Office of the Attorney General and the State of South Carolina are entitled to Eleventh Amendment immunity, and that Filyaw's Complaint fails to state a claim against either Defendant. *See* ECF No. 34-1 at 3-9. In Response, Filyaw filed a Motion to Amend his Complaint, ECF No. 68. Within this Motion, he appears to concede that the Office of the Attorney General and the State of South Carolina (as well as the Department of Mental Health) are protected by sovereign immunity and therefore agrees these

6

Defendants should be dismissed from this action. Filyaw did not otherwise file any responsive briefing as to this Motion.

The Eleventh Amendment provides: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. CONST. amend. XI. The United States Supreme Court has long held that the Eleventh Amendment also precludes suits against a state by one of its own citizens, as well as suits by citizens of another State. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). A state cannot, without its consent, be sued in the District Court of the United States by one of its own citizens for an alleged violation of the Constitution and/or laws of the United States. *Edelman*, 415 U.S. at 663. This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001). Eleventh Amendment immunity also extends to "arms of the State" and state employees acting in their official capacity. *Doe v. Coastal Carolina Univ.*, 359 F. Supp. 3d 367, 378 (D.S.C. Jan. 9, 2019). Relatedly, the Supreme Court has held that neither a State nor its officials acting in their official capacities are "persons" under § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).[6]

Here, the State of South Carolina has not consented to be sued for such claims. *See* S.C. Code Ann. 15-78-20(e), and no exceptions to sovereign immunity apply. Plaintiff does not appear to challenge this argument, and the undersigned finds that the State of South Carolina is entitled to Eleventh Amendment sovereign immunity as a matter of law. Similarly, the Office of the

---

[6] Likewise, to the extent Filyaw sought to sue "Recovery Solutions, formerly known as Wellpath," this entity is not a "person" amenable to suit under § 1983. *See Cyr v. McMaster*, No. 8:24-CV-6067-DCN-WSB, 2025 WL 4417353, at *9 (D.S.C. Nov. 5, 2025), *report and recommendation adopted*, No. 8:24-CV-6067 DCN, 2025 WL 4417890 (D.S.C. Dec. 17, 2025).

Attorney General is entitled to immunity under the Eleventh Amendment. The South Carolina Office of the Attorney General is an agency of South Carolina. *See Field v. McMaster*, No. 6:09-CV-1949-HMH-BHH, 2010 WL 1076060 (D.S.C. Mar. 18, 2010). South Carolina has immunity from suit in this court. Accordingly, the undersigned recommends, noting that Plaintiff does not challenge otherwise, that these Defendants should be dismissed from this action.[7]

 B. Motion for Summary Judgment (ECF No. 86)

Defendants SCDMH, Bank and Gothard filed their Motion for Summary Judgment on January 21, 2026. ECF No. 86. The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is

---

[7] The undersigned also agrees that Filyaw has failed to allege any personal involvement on the part of these Defendants, nor are these Defendants "persons" as contemplated under § 1983. To state a plausible claim for relief under 42 U.S.C. § 1983, a person must allege that he or she was injured by "the deprivation of any [of his or her] rights, privileges, or immunities served by the Constitution and laws" by a "person" acting "under the color of state law." *See generally* 5 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1230 (3d ed. 2014); *see also Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (Liability under § 1983 involves a showing that "the official charged acted personally in the deprivation of the plaintiff's rights.").

to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995). A party cannot create a genuine issue of material fact solely with conclusions in his or her own argument, affidavit, or deposition that are not based on personal knowledge. *See Latif v. The Cmty. Coll. of Baltimore*, 354 F. App'x 828, 830 (4th Cir. 2009) (affirming district court's grant of summary judgment, noting plaintiff's affidavit, which offered conclusions not based on his own knowledge, did not create genuine issues of material fact).

Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319, 322 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc.Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

1. Eleventh Amendment Immunity

Defendant SCDMH argues it is entitled to immunity pursuant to the Eleventh Amendment. In one of Filyaw's several filings, he appears to agree that the SCDMH is entitled to immunity. *See* ECF No. 68. The Eleventh Amendment provides: "[t]he Judicial power of the United States

9

shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. CONST. amend. XI. The United States Supreme Court has long held that the Eleventh Amendment also precludes suits against a state by one of its own citizens, as well as suits by citizens of another State. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001). Eleventh Amendment immunity also extends to "arms of the State" and state employees acting in their official capacity. *Doe v. Coastal Carolina Univ.*, 359 F. Supp. 3d 367, 378 (D.S.C. Jan. 9, 2019). The SCDMH is a state agency organized under the laws of South Carolina, and therefore an "arm of the state." Accordingly, the undersigned finds that the SCDMH is entitled to immunity.

### 2.  Article III Standing

Defendants argue that Filyaw lacks Article III standing to bring this action. Article III of the Constitution constrains federal courts to resolve only actual cases and controversies. U.S. CONST. art. III., § 2, cl. 1. Therefore, a plaintiff must demonstrate he has standing to adjudicate his claim in federal court. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). To establish standing, a plaintiff must show: (1) he suffered an "injury in fact"; (2) a causal connection between the injury and the conduct complained of; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). An "injury in fact" is an "invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) actual or imminent, not 'conjectural' or 'hypothetical.'' *Id.*

Defendants argue that Filyaw has failed to establish he suffered any harm as a result of any

10

alleged action of Defendants, nor can he show an actual controversy between the parties. It is Defendants' position that Filyaw cannot show that his release from the SVPTP was delayed as a result of any alleged failure to conduct periodic reviews, because he has not established that his mental condition so changed that he was now been deemed "safe to be at large." Defs.' Motion at 10; ECF No. 85-1. Filyaw's position is that he has remained involuntarily committed as a result of the fact that he has not undergone annual reviews to ascertain whether he should be released. The undersigned finds that Filyaw's allegations that he has remained involuntarily committed as a result of an alleged delay in proceedings to petition for release constitute personal harm. While Defendants argue only that Filyaw has not presented any evidence that any untimely reviews delayed his release, the undersigned disagrees that he has not at least plausibly alleged a constitutional violation resulting in an alleged injury. Further, this court has previously considered claims brought by residents challenging the conditions of confinement pursuant to the SVPA, as well as the constitutionality of the SVPA itself. *Cyr*, 2025 WL 4417353, at *9. Thus, the undersigned has considered Filyaw's allegations, as alleged in his pleadings.[8]

       3.   Failure to State a Claim

Defendants argue Filyaw fails to state a claim for relief that they violated his constitutional rights. Filyaw argues that one or more Defendants were deliberately indifferent to his medical needs. Involuntarily committed patients retain a liberty interest in conditions of reasonable care and safety and in reasonably nonrestrictive confinement conditions. *Youngberg v. Romeo*, 457 U.S. 307, 324 (1982). As to claims brought by a resident of the SVPTP, the Fourth Circuit has stated

---

[8] As previously explained, Filyaw has filed a multitude of motions, letters, proposed documents, and amendments to his pleadings. Filyaw's filings and continual attempts to reinvent his pleadings suggest he intends for the court to parse out all conceivable arguments or allegations lodged at Defendants. However, "[j]udges are not like pigs, hunting for truffles buried [in the record]." *See Murthy v. Missouri*, 603 U.S. 43, 108 n.7 (2024). Still, the court has reviewed Filyaw's filings, many of which contain duplicative information.

that the Due Process Clause provides that such residents are entitled to "adequate food, shelter, clothing, and medical care." *Christian v. Magill*, 724 F. App'x 185, 187 (4th Cir. 2018) (citing *Youngberg*, 457 U.S. at 321–22. However, "liability for the treatment of civilly committed individuals cannot be imposed for mere negligence; it can only be imposed when 'the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment.'" *Christian*, 724 F. App'x at 187 (citing *Youngberg*, 457 U.S. at 323). Due process requires that the conditions and duration of confinement under the SVPA bear some "reasonable relation" to the purpose for which persons are committed. *Treece v. S.C. Dep't. of Mental Health*, No. 3:08-CV-3909-DCN-JRM, 2010 WL 3781726, at *6 (D.S.C. Feb. 19, 2010). In deciding whether a civilly-institutionalized individual's constitutional rights have been violated, the courts balance the individual's liberty interest against the relevant state interests, giving deference to the decisions of professionals. *Youngberg*, 457 U.S. at 321. Filyaw does not allege that he suffered from unconstitutional conditions of confinement; rather, he alleges that while committed he has had several medical issues that he has had to undergo treatment for while in the SVPTP program. The Fourteenth Amendment ensures that states will provide for the medical needs of both individuals in penal institutions, as well as anyone restricted by a state from obtaining medical care on his own. *Deshaney v. Winnebago*, 489 U.S. 189, 198-99 (1989). To state this type of claim pursuant to the Fourteenth Amendment, Filyaw must provide proof of more than mere negligence in diagnosing and treating medical complaints. *Patten v. Nichols*, 274 F.3d 829, 843 (4th Cir. 2001). Filyaw alleges that as a result of his inability to get an annual review, he has had multiple medical issues arise while involuntarily committed. He cites the fact that he underwent open heart surgery, for example, as well as indicates he has suffered other mental health issues. ECF No. 1 at

6. However, Filyaw does not allege or otherwise show that these Defendants denied him medical treatment or violated any professional standard in the care provided to him. Nor has he provided any evidence that the named Defendants are in any way responsible for providing this type medical care. Filyaw does not allege that he was denied treatment or that he was not afforded proper treatment. Accordingly, the undersigned finds that, to the extent Filyaw alleges a claim under the Eighth Amendment, he has not established a claim for deliberate indifference to his medical needs on the part of these Defendants.

The undersigned has also considered whether Plaintiff has established that his constitutional rights afforded under the Due Process Clause of the Fourteenth Amendment were violated. The SVPTP's commitment procedures are governed by state law, specifically the SVPA. Once a person is committed, an individual is to receive an evaluation of their mental condition within one year of the initial commitment order. S.C. Code Ann. § 44-48-110(A)(1). After the first review, an OHM-designated qualified evaluator will "evaluate the resident's mental condition within one year after a pending review is resolved by a filed court order." S.C. Code Ann. § 44-48-110(A)(1). The order must indicate a finding of no probable cause, a waiver by the resident, or an order of continued commitment after a periodic review trial. S.C. Code Ann. § 44-48-110(A)(1)(a)-(c). Filyaw was committed to a facility on February 13, 2018 after a hearing in Florence County. *See* Annual Review, attached as Exhibit B to Defs.' Motion, ECF No. 85-4; *see also* ECF No. 1-1 at 2 (Order of Commitment, attached to Filyaw's Complaint).

Defendant Kelly Gothard is the director of Forensic Services for the South Carolina Department of Behavioral Health and Developmental Disabilities. *See* Affidavit of Kelly Gothard, PhD, ¶ 1, attached as Exhibit A to Defs.' Motion, ECF No. 85-2. She explains that Filyaw received his first periodic evaluation in 2021, with the report dated August 28, 2021. Gothard Aff., ¶ 11. In

the course of that evaluation, Filyaw's evaluator, Marla L. Domino, PhD, opined that Filyaw's mental condition had not so changed that he was safe to be at large. Gothard Aff., ¶ 11; *see also* Exhibit B to Defs.' Motion; ECF No. 1-1 at 4-5. Defendant Gothard avers that Defendants were not involved in the litigation of the 2021 evaluation. Gothard Aff., ¶ 13. On May 9, 2024, Florence County issued a Consent Order, which indicates that Filyaw waived his right to a hearing on the 2021 evaluation. Gothard Aff., ¶ 12. Filyaw was represented by counsel for this proceeding. *See* 2024 Consent Order, attached as Exhibit D to Defs.' Motion, ECF No. 85-5. In his own filings, Filyaw indicates that the delay in these proceedings was caused, at least in some part, by the unexpected passing of counsel initially appointed to represent him in this proceeding. *See* ECF No. 1 at 6. According to Filyaw, Mr. Ralph Wilson was appointed to represent him in 2023. *See* ECF No. 1 at 6; *see* ECF No. 1-1 at 1 (Consent Order to Substitute Counsel, attached to Filyaw's Complaint). According to Gothard, this Consent Order operated as the final adjudication on Filyaw's 2021 periodic evaluation. *See* Gothard Aff., ¶ 12. In other words, Defendants' position is that Filyaw's 2021 review was pending until it was resolved by the filed court order on May 9, 2024. *See* S.C. Code Ann. § 44-48-110(A)(1). Once this evaluation period went through to final adjudication, Filyaw received another evaluation in 2025. *See* Gothard Aff., ¶ 14; *see also* 2025 Report Page, attached as Exhibit E to Defs.' Motion, ECF No. 85-6. This evaluation period covered July 2021 through July 2025, with a report date of August 8, 2025. *See* Exhibit E.[9] Filyaw does not allege that any of the Defendants were personally involved in the review proceedings or otherwise allege that they were personally involved in any delay during the review period.

Dr. Robert Bank also provided an affidavit in support of Defendants' Motion for Summary

---

[9] The date of this Report predates the date upon which the South Carolina Department of Mental Health was served with Filyaw's lawsuit on August 11, 2025. *See* ECF No. 24. Gothard and Bank were not initially named as Defendants at this time and did not appear in this action until December 4, 2025. ECF No. 61.

Judgment. He avers that he is the acting director of the Office of Mental Health. *See* Affidavit of Robert Bank. M.D., ¶ 1, attached as Exhibit C to Defs.' Motion, ECF No. 85-4. Defendant Bank provides that he is not involved in the scheduling or drafting of periodic reports. Bank Aff., ¶ 3. He further avers that he has no knowledge of Filyaw's periodic evaluations or report history. Bank Aff., ¶ 5.

Filyaw alleges he filed grievances related to the evaluation process, but that "excuses are used" to deny a grievance. ECF No. 1 at 9. Filyaw attaches at least one response to a "grievance." ECF No. 1-1 at 7. However, the Constitution does not create an entitlement to grievance procedures or access to any similar procedure voluntarily established by a state. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Aside from his issue with grievances, it is clear from his filings that Filyaw's main allegation is that during the time period that his 2021 review was pending final resolution, he should have been receiving additional reviews over the course of 2022-2025. This process is outlined by state statute.

The SVPA provides that once an individual has his annual examination, the report is then provided to the court. *See* S.C. Code Ann. § 44-48-110(A)(2). The court, in turn, conducts an annual hearing to review the status of the committed person. *See* S.C. Code Ann. § 44-48-110(A)(2)-(F). At this hearing, the individual is permitted to petition the state court for release, and if the state court determines probable cause exists to believe the individual is safe to be at large, and, if released, unlikely to commit acts of sexual violence, the court must schedule a trial on this issue. *See* S.C. Code Ann. § 44-48-110(F); *see also Hamm v. South Carolina*, No. 9:16-CV-2922-RMG-BM, 2016 WL 11214095, at *3 (D.S.C. Nov. 17, 2016), *report and recommendation adopted*, No. 9:16-CV-02922-RMG, 2017 WL 176294 (D.S.C. Jan. 17, 2017).[10]

---

[10] In one South Carolina hearing review, one civilly committed person sought review of his annual review, with a report date of April 17, 2013. The court held a hearing on January 22, 2014. This

The current statutory language is instructive.  In reviewing earlier cases, prior to 2023, the applicable code section provided, "a person committed pursuant to this chapter must have an examination of his mental condition performed once every year." S.C. Code Ann. § 44-48-110 (2004); *see also In re Care & Treatment of Corley*, 365 S.C. 252, 255, 616 S.E.2d 441, 442 (Ct. App. 2005) ("A person committed under the Act must have an annual examination of his mental conditions."); *Ridley v. Gaffney*, No. CV 1:21-CV-997-MBS-SVH, 2022 WL 5236042, at *16 (D.S.C. May 18, 2022), *report and recommendation adopted*, No. 1:21-CV-997-MBS, 2022 WL 4078040 (D.S.C. Sept. 6, 2022). In 2023, this code section was amended.[11] Under the applicable code provision, a committed person *must* have an evaluation of his mental condition within one year from the filing date of the initial commitment order. S.C. Code Ann. § 44-48-110 (emphasis added). Thereafter, an evaluator *will* evaluate the resident's mental condition *within one year after a pending review* is resolved by a filed court order. S.C. Code Ann. § 44-48-110 (emphasis added). The statutory language makes a distinction, providing that the requirement that an "annual review" must be completed in the first year, while subsequent reviews occur within one year after resolution or final determination in the state court proceedings.

The record before the court reveals that after Filyaw underwent his initial 2021 examination, with a report date of August 28, 2021, the evaluation was apparently provided to the court. Filyaw was not appointed counsel by the state court until May 26, 2023. ECF No. 1-1 at 1. Once he was appointed counsel, approximately one more year elapsed before the Consent Order

---

case does not indicate whether the person received an interim review during the time in which he requested a hearing and the state court issued its decision concerning the annual review. *In re Care and Treatment of Michael Lawyer*, No. 2008-CP-14-183, 2014 WL 7778773, at *1 (S.C. Com. Pl. Feb. 26, 2014).

[11] https://www.scstatehouse.gov/sess125_2023-2024/bills/146.htm

was issued indicating Filyaw waived his right to a hearing.[12] The record therefore suggests that after the initial evaluation, a lapse in time occurred over the course of the state court proceedings. Filyaw, however, has failed to provide any evidence that the delay was caused by any action or inaction on the part of these Defendants in this case, or that these Defendants violated his due process rights. Defendants provide affidavit testimony to support their argument that they are not involved in conducting these annual examinations, and Filyaw has not presented any evidence or allegations that Defendants prevented Filyaw's court proceedings in state courts from moving forward. Even assuming that Filyaw was entitled to an annual review during the pendency of the state court proceedings for any of the years in the interim time period, he has not established that these Defendants personally prevented him from undergoing an annual review. Liability under § 1983 involves a showing that "the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985).

Further, this court has previously observed that an SVP detainee "has no liberty interest in the underlying procedure for determining whether he is ready for release," and "has no liberty interest in his treatment plan and the procedures adopted by the [State] to determine whether he should be released from civil commitment." *Cyr*, 2025 WL 4417353, at *11. Accordingly, the undersigned recommends granting summary judgment to Defendants.[13] Relatedly, to the extent

---

[12]To the extent Filyaw alleges he was denied counsel, the record before this court, including documents provided by Filyaw, show that he had counsel during the initial court proceedings until his attorney passed away. He was then represented by Ralph J. Wilson. ECF No. 1. In a recent letter, he attaches a letter from another lawyer who represented him in his most recent review period. *See* ECF No. 122-1. Moreover, Filyaw has also provided no additional allegations or support for any allegation that these Defendants were responsible for providing him counsel in the ongoing proceedings in state court. Therefore, the record does not support his contention that he was denied counsel.

[13] Aside from the record being unclear why it took what appears to be an extended period of time for Filyaw to receive a resolution of his 2021 review, the undersigned questions whether this court has jurisdiction to consider the timeframe of the state court proceedings and/or whether this court

Filyaw seeks injunctive relief in the form of being released from commitment, the undersigned finds that he must seek release pursuant to the procedure outlined in the SVPA. Further, it appears, based on Filyaw's own filings, that he was granted authorization to petition for release by the Director of the South Carolina Department of Mental Health on March 31, 2026. *See* ECF No. 122-1 at 3.

### 4. Qualified Immunity

Defendants alternatively argue that they are immune from suit. When a qualified immunity defense is raised, the courts apply a two-part test. First, the court must determine whether the facts viewed in the plaintiff's favor make out a violation of one's constitutional rights, and second, whether the violated right was clearly established at that time. *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022) (citing *Pearson v. Callahan*, 555 U.S. 233, 231 (2009)). The Fourth Circuit employs a split burden of proof for the qualified immunity defense. The plaintiff bears the burden of proving the first prong, and the [officer] bears the burden on the second prong. *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022) (citing *Henry v. Purnell*, 501 F.3d 374, 377-78 & n.4 (4th Cir. 2007)); *see also Mays v. Sprinkle*, 992. F.3d 295, 302 n.5 (4th Cir. 2021) (explaining that plaintiff has the burden of proof to show a constitutional violation, while defendant must show the violation was not clearly established). To be a clearly established right, it must be sufficiently clear that a reasonable official would have understood that what he or she is or was doing violates that right. *Taylor v. Barkes*, 575 U.S. 822, 825 (2015). Qualified immunity protects all but the "plainly incompetent or those who knowingly violate the law." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (citing *Ashcroft v. Al-Kidd*, 563 U.S. 731, 743 (2011)). Here, because the undersigned has found

---

is the proper venue to challenge the state court proceeding timeline. *See Hamm*, 2016 WL 11214095, at *3.

that Filyaw failed to establish that Defendants violated his constitutional rights, Filyaw has failed to prove the first prong. Moreover, the undersigned finds that it is not clearly established whether Filyaw was entitled to an annual review while a prior review was pending in state court. Thus, the undersigned recommends finding that Defendants are alternatively entitled to qualified immunity, as there is no evidence that they knowingly violated any law.

III. Conclusion & Recommendation

The court has made a careful review of the pleadings, evidence, and arguments in this case. For the foregoing reasons, the undersigned recommends Defendants Office of the Attorney General and State of South Carolina's Motion to Dismiss, ECF No. 34 and Defendants SCDMH, Bank and Gothards' Motion for Summary Judgment, ECF No. 85, be granted for the reasons stated herein. Additionally, as the undersigned has previously found that the remaining "named" Defendants were never properly served, the undersigned recommends dismissing this case against the remaining Defendants listed on the docket. If the district court agrees with this recommendation, this action would be dismissed in its entirety.

**IT IS SO RECOMMENDED.**

July 8, 2026                                   Kaymani D. West
Florence, South Carolina                       United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. [I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

20